**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES RALPH DUNCAN,<br><br>Plaintiff,<br><br>v.<br><br>C.O. RICKY GARRISON,<br><br>Defendant. | No. 4:22-CV-01111<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 3, 2022**

## I BACKGROUND

Plaintiff James Ralph Duncan ("Duncan"), an inmate formerly confined in the Allenwood Federal Correctional Institution, ("FCI-Allenwood"), White Deer, Pennsylvania,[1] commenced the above captioned *Bivens*[2] action on July 15, 2022.[3] The sole Defendant is Ricky Garrison, a correctional officer at FCI-Allenwood.[4] Plaintiff challenges a December 2018 disciplinary hearing in which Plaintiff claims he lost 180 days of good conduct time for a November 26, 2018 incident involving he and Defendant Garrison.[5] Along with the filing of the complaint, Plaintiff filed

---

[1] Plaintiff is currently confined in the Columbia County Prison, Bloomsburg, Pennsylvania.
[2] *Bivens v. Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[3] Doc. 1.
[4] *Id*.
[5] *Id*.

an application to proceed *in forma pauperis*.[6] Plaintiff's application to proceed *in forma pauperis* will be granted based on the information contained therein and the Clerk will be ordered to file the complaint.

At this time, this Court must screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the Plaintiff's complaint will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## II. FACTUAL ALLEGATIONS

Plaintiff claims that on November 26, 2018, while confined in FCI-Allenwood, Defendant Garrison "locked [him] out of his cell until Plaintiff reported to the unit office so Garrison could 'counsel' this inmate" and "when [he] entered the office, Garrison was verbally abusive and then struck this Plaintiff in the mouth, cutting [his] lip."[7] Plaintiff then "struck the officer in return and a brief fist fight ensued for approximately 15 seconds" and then Plaintiff "left the office."[8] He states that "soon after, [he] was handcuffed and moved to the Special Housing Unit and medically assessed, including breathalyzed and urinalysis tested by

6 Doc. 2.
7 *Id*. at 4.
8 *Id*.

medical staff."[9] As a result of this incident, Plaintiff claims that he "received two disciplinary write-ups; one for assaulting a person that involved the incident with CO Garrison and the second for refusing to submit to a urinalysis test."[10] A disciplinary hearing was held in December 2018, but Plaintiff was not "permitted to attend the disciplinary hearing and was found guilty on both counts based on the evidence" and "as punishment, the hearing officer took 180 earned good time days from [him]; loss of visiting; phone use; commissary for 2½ years; and 35 days in punitive isolation."[11]

On March 14, 2019, Plaintiff states he was "indicted on one count of assault" and "on April 28, 2021, Plaintiff was unanimously acquitted of this criminal charge."[12]

On July 15, 2022, Plaintiff filed the instant action, challenging the December 2018 disciplinary hearing, claiming that the "facts of this same evidence exonerated this Plaintiff; conversely the documented evidence that Plaintiff, in fact, submitted to a urinalysis test wasn't considered by the DHO" and "instead CO Lund's claim that Plaintiff refused a urinalysis test was favored without any supporting evidence and this hearing was, also held without this Plaintiff's knowledge."[13] Plaintiff claims that his "right to a fair disciplinary hearing was

---

9 *Id.*
10 *Id.* at 6.
11 *Id.*
12 *Id.*
13 *Id.* at 8.

violated, [he was] entrapped and assaulted, falsely accused and falsely convicted."[14] For relief, Plaintiff requests that the Court "restore the deprived good time removed from [his] credit and compensate for good time credits denied Plaintiff since May, 2019 and award any monetary compensation it may deem just."[15]

## III. STANDARD OF REVIEW

Per the Prison Litigation Reform Act, Pub.L. No. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*,[16] seeks redress against a governmental employee or entity,[17] or brings a claim with respect to prison conditions.[18] The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'."[19] To survive *sua sponte* screening for failure to state

---

14 *Id*. at 9.
15 *Id*.
16 *See* 28 U.S.C. § 1915(e)(B).
17 *See* 28 U.S.C. § 1915A(b).
18 *See* 42 U.S.C. § 1997e.
19 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

a claim,[20] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."[23]

## IV. DISCUSSION

Congress established a damages remedy under 42 U.S.C. § 1983 with respect to state officials for constitutional violations, but it did not enact a corresponding statute with respect to federal officials.[24] In *Bivens*, however, the Supreme Court of the United States recognized an implied right of action for damages against federal officials who have violated a person's Fourth Amendment right to be free from unreasonable searches and seizures.[25] The Supreme Court has extended *Bivens* to other contexts twice. First, in *Davis v. Passman*, 442 U.S. 228 (1979), it held that an administrative assistant fired by a congressman had a Bivens

---

20 "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir.2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir.2012) (*per curiam*) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir.2008) (discussing 28 U.S.C. § 1915A(b)).

21 *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir.2009) (citation omitted).

22 *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n. 17 (3d Cir.2012) (quoting *Iqbal*, 556 U.S. at 678).

23 *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.2013) (citation omitted).

24 *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

25 *Id*. at 392.

remedy for gender discrimination under the Fifth Amendment's Due Process Clause.[26] Then, in *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court permitted a *Bivens* remedy against federal prison officials for failure to provide adequate medical treatment for a prisoner's asthma under the Eighth Amendment's Cruel and Unusual Punishment Clause.[27]

"These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."[28] Over the years that followed, the Supreme Court "consistently refused to expand *Bivens* actions beyond these three specific contexts."[29]

> For example, the Court declined to create an implied damages remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, [462 U.S. 367, 390 (1983)]; a race-discrimination suit against military officers, *Chappell v. Wallace*, [462 U.S. 296, 297, 304–05 (1983)]; a substantive due process suit against military officers, *United States v. Stanley*, [483 U.S. 669, 671–72 (1987)]; a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, [487 U.S. 412, 414 (1988)]; a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, [510 U.S. 471, 473–74 (1994)]; an Eighth Amendment suit against a private prison operator, [*Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)]; a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, [551 U.S. 537, 547–48, 562 (2007)]; and an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*, [565 U.S. 118, 120 (2012)].[30]

---

26 *Id*. at 248–49.
27 *Id*. at 19.
28 *Ziglar*, 137 S. Ct. at 1855.
29 *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).
30 *Ziglar*, 137 S. Ct. at 1857.

Nevertheless, lower courts had relied on *Bivens* to imply direct causes of action against federal officers for other types of constitutional violations.[31]

More recently, in *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017), the Supreme Court reviewed *Bivens* claims brought by immigration detainees challenging the official policies that caused their detention and the conditions of their confinement in federal immigration custody.[32] The detainees claimed that the defendants' conduct violated their substantive due process rights under the Fifth Amendment, their equal protection rights under the Fifth Amendment, and their right to be free from unreasonable searches and seizures under the Fourth Amendment.[33]

Noting that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity,"[34] the Supreme Court made it clear that federal courts must exercise caution before extending the remedy to claims beyond the three contexts already recognized. The Court provided a two-step analysis to determine whether to imply a *Bivens* cause of action in a new context.

First, the Court held that, "if the case is different in a meaningful way to previous *Bivens* cases by [the Supreme] Court, then the context is new."[35]

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be

31 *Mack*, 968 F.3d at 318–19.
32 *Id*. at 1852–53.
33 *Id*. at 1853–54.
34 *Id*. at 1857
35 *Id*. at 1859.

> confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary in to the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.[36]

Next, if the case implicates a new *Bivens* context, the court must then ask whether "special factors counsel hesitation in expanding *Bivens*."[37]

> [This] inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Thus, to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative.[38]

One such factor may be whether "any alternative, existing process for protecting the injured party's interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."[39]

Here, the Plaintiff has asserted *Bivens* damages claims against Defendant Garrison for allegedly writing a false misconduct report against him, as well as challenging the adjudication of the related prison disciplinary hearing, all of which allegedly deprived him of his Fifth Amendment due process rights.

There are meaningful differences between the Plaintiff's Fifth Amendment due process claims based on allegedly falsified misconduct report and an allegedly procedurally deficient disciplinary proceeding in the prison context and the claims

---

[36] *Id*. at 1860.
[37] *Mack*, 968 F.3d at 320; *see also Ziglar*, 137 S. Ct. at 1857.
[38] *Ziglar*, 137 S. Ct. at 1857–58.
[39] *Id*. at 1858 (internal quotation marks and brackets omitted).

at issue in *Davis*, which involved Fifth Amendment equal protection claims based on gender discrimination in the federal workplace context. Here, there is no resemblance whatsoever to the facts at issue in *Bivens*. Because no Supreme Court decision has ever extended *Bivens* to encompass the context presented by this Plaintiff's due process claims, his cause of action presents a new *Bivens* context.

The Court's next inquiry is whether special factors counsel hesitation, and I will answer in the affirmative, noting the availability of the BOP's disciplinary hearing and administrative remedy processes to contest misconduct charges and administratively appeal adverse disciplinary sanctions,[40] together with the availability of federal habeas relief to review prison disciplinary proceedings that result in a loss of good conduct time.[41] "Furthermore, 'the judicial restraint exercised in cases implicating the administration of prisons' is another factor weighing against extension of the *Bivens* remedy."[42] Therefore, it is inappropriate to imply a *Bivens* cause of action in this new context.

Other courts have found in similar cases that these special factors weigh against extending *Bivens* to claims like the Fifth Amendment due process claims

---

40 *See Mack*, 968 F.3d at 320–21

41 *See, e.g., Venizelos v. Saad*, No. 3:18-cv-00119-GMG-RWT (N.D.W. Va. petition filed July 30, 2018); *see also Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169 (E.D. Cal. 2018) ("It is clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief."), appeal filed, No. 18-17464 (9th Cir. filed Dec. 31, 2018).

42 *Railey v. Ebbert*, 407 F. Supp. 3d 510, 523 (M.D. Pa. 2019).

alleged here.[43]

Accordingly, the Plaintiff's Fifth Amendment *Bivens* claim will be dismissed *sua sponte* for failure to state a claim upon which relief can be granted,[44] pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Moreover, these claims be dismissed without leave to amend as any amendment would clearly be futile under the circumstances presented.[45]

## V. CONCLUSION

For the foregoing reasons, this Court will dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Amendment is futile.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

43 *See, e.g., Zavala v. Rios*, 721 Fed. App'x 720, 721–22 (9th Cir. 2018) (declining to extend *Bivens* to Fifth Amendment procedural due process claim); *Louis-El v. Ebbert*, 448 F. Supp. 3d 428, 439–41 (M.D. Pa. 2020) (declining to extend *Bivens* to Fifth Amendment due process claim); *Simmons v. Maiorana*, Civil Action No. 3:16-cv-1083, 2019 WL 4410280, at *14–*15 (M.D. Pa. Aug. 23, 2019) (declining to extend *Bivens* to Fifth Amendment due process claim and Eighth Amendment conditions of confinement claim), *report and recommendation adopted* by 2019 WL 4412296 (M.D. Pa. Sept. 13, 2019).

44 Although not specified in his complaint, to the extent that Plaintiff seeks to raise an Eighth Amendment excessive force claim against Defendant Garrison, such claim would likewise be subject to dismissal for failure to state a claim. *Hunt*, 336 F. Supp. 3d at 1168–70 (declining to extend *Bivens* to Fifth Amendment due process claim and Eighth Amendment excessive force claim).

45 *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).